# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN TRAINOR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-473** |
| **BURL CAIN** | **SECTION "E"(3)** |

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).

Petitioner, Kevin Trainor, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On April 14, 2004, he was convicted of second degree murder under Louisiana law.[1] On June 7, 2004, he was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On January 11, 2006, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on September 22, 2006.[4]

---

[1] State Rec., Vol. 6 of 8, trial transcript, p. 213; State Rec., Vol. 3 of 8, minute entry dated April 14, 2004; State Rec., Vol. 5 of 8, jury verdict form.
[2] State Rec., Vol. 6 of 8, sentencing transcript; State Rec., Vol. 3 of 8, minute entry dated June 7, 2004.
[3] State v. Trainor, No. 2004-KA-1931 (La. App. 4th Cir. Jan. 11, 2006) (unpublished); State Rec., Vol. 5 of 8.
[4] State v. Trainor, 937 So.2d 375 (La. 2006); State Rec., Vol. 5 of 8.

On July 12, 2007, petitioner filed with the state district court a post-conviction application,[5] which he later supplemented.[6] The application was originally denied as untimely on October 15, 2012;[7] however, the Louisiana Fourth Circuit Court of Appeal vacated that judgment and remanded the matter.[8] On May 7, 2013, the state district court then denied relief on the merits.[9] His related writ applications were likewise denied by the Louisiana Fourth Circuit Court of Appeal on June 13, 2013,[10] and by the Louisiana Supreme Court on January 27, 2014.[11]

Petitioner thereafter filed the instant federal habeas corpus application asserting two claims: (1) his federal constitutional right to a speedy trial was violated; and (2) his confession was erroneously admitted at trial.[12] The state conceded that the application was timely but argued that it should be dismissed because petitioner failed to exhaust his remedies in the state courts.[13]

The undersigned United States Magistrate Judge issued a report finding that while petitioner's speedy-trial claim was exhausted, his claim concerning his confession was not. Accordingly, it was recommended that the application be dismissed as a "mixed petition."[14] See Rose v. Lundy, 455 U.S. 509, 522 (1982) ("[B]ecause a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief, we hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."); see also Pliler v. Ford, 542 U.S. 225, 230 (2004) ("Under Rose, federal district courts must dismiss mixed habeas petitions."); Alexander v. Johnson, 163 F.3d 906, 908 (5th Cir. 1998) ("A habeas petition containing both

---

[5] State Rec., Vol. 3 of 8.
[6] State Rec., Vol. 3 of 8.
[7] State Rec., Vol. 7 of 8, Judgment dated October 15, 2012.
[8] State v. Trainor, No. 2012-K-1569 (La. App. 4th Cir. Nov. 16, 2012); State Rec., Vol. 7 of 8.
[9] State Rec., Vol. 8 of 8, Judgment dated May 7, 2013.
[10] State v. Trainor, No. 2013-K-0796 (La. App. 4th Cir. June 13, 2013); State Rec., Vol. 8 of 8.
[11] State ex rel. Trainor v. State, 131 So.3d 55 (La. 2014); State Rec., Vol. 8 of 8.
[12] Rec. Doc. 3.
[13] Rec. Doc. 16.
[14] Rec. Doc. 18.

exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice."). The United States District Judge then adopted that Report and Recommendation and entered judgment dismissing the petition.[15]

The Court thereafter received petitioner's objections to the Report and Recommendation.[16] In those objections, petitioner asked the Court to stay these federal proceedings while he returned to state court to attempt to exhaust his claim concerning his confession. In light of the objections, the District Judge vacated her Order and Judgment dismissing the application and referred the matter back to the undersigned for a supplemental report addressing whether a stay would be appropriate.[17]

The undersigned then issued a supplemental report recommending that the request for a stay be denied but noting that, if he desired, petitioner should instead be allowed to withdraw his unexhausted claim and proceed on only his exhausted speedy-trial claim.[18] See Rhines v. Weber, 544 U.S. 269, 278 (2005) ("[I]f a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."). The United States District Judge adopted that Supplemental Report and Recommendation,[19] and petitioner then filed an amended petition asserting only the speedy-trial claim.[20] For the following reasons, the undersigned now recommends that petitioner's speedy-trial claim be denied on the merits and that the amended petition be **DISMISSED WITH PREJUDICE**.

---

[15] Rec. Doc. 19 and 20; Trainor v. Cain, Civ. Action No. 14-473, 2015 WL 5882889 (E.D. La. Oct. 8, 2015).
[16] Rec. Doc. 22.
[17] Rec. Doc. 23.
[18] Rec. Doc. 24.
[19] Rec. Doc. 28.
[20] Rec. Doc. 31.

3

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

4

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court

5

precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

6

**Petitioner's Claim**

Petitioner argues that his right to a speedy trial was violated by undue delays in his state prosecution. On direct appeal, petitioner argued that the state district court erred as a matter of state law in denying a motion to quash contending that the prosecution was not timely commenced under state law. The Louisiana Fourth Circuit Court of Appeal denied that claim,[21] and the Louisiana Supreme Court then denied petitioner's related writ application.[22]

In the state post-conviction proceedings, petitioner then argued, *inter alia*, that he was denied a speedy trial in violation of both state *and* federal law.[23] The state district court denied post-conviction relief.[24] His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal[25] and by the Louisiana Supreme Court.[26]

Although Louisiana law protects a criminal defendant's right to a speedy trial, that state-law right is of no moment in this federal proceeding. Even if petitioner's rights under state law were violated, which is an issue this Court need not and does not reach, claims based on state laws concerning the right to a speedy trial are not cognizable on federal habeas review. See, e.g., Allen v. Cain, No. 11-211, 2013 WL 4499028, at *13 (M.D. La. Aug. 20, 2013); Mosby v. Cain, Civ. Action No. 11-41, 2012 WL 6651920, at *5 (M.D. La. Nov. 26, 2012), adopted, 2012 WL 6629622 (M.D. La. Dec. 20, 2012); Gardner v. Director, TDCJ-CID, Civ. Action No. 6:09cv25, 2009 WL 1936121, at *6 (E.D. Tex. July 6, 2009). Simply put: "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Trevino v. Johnson, 168

---

[21] State v. Trainor, No. 2004-KA-1931 (La. App. 4th Cir. Jan. 11, 2006) (unpublished); State Rec., Vol. 5 of 8.
[22] State v. Trainor, 937 So.2d 375 (La. 2006); State Rec., Vol. 5 of 8.
[23] The undersigned notes that, in the state court proceedings, petitioner's post-conviction claim was vague, and his discussion rested primarily on the purported violation of state law guarantees to a speedy trial. However, in the statement of his claim, he also alleged a violation of federal constitutional law.
[24] State Rec., Vol. 8 of 8, Judgment dated May 7, 2013.
[25] State v. Trainor, No. 2013-K-0796 (La. App. 4th Cir. June 13, 2013); State Rec., Vol. 8 of 8.
[26] State *ex rel.* Trainor v. State, 131 So.3d 55 (La. 2014); State Rec., Vol. 8 of 8.

F.3d 173, 184 (5th Cir. 1999) (quotation marks omitted); accord Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)). Rather, federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

Of course, it is true that the United States Constitution separately protects a state criminal defendant's right to a speedy trial. Concerning federal speedy-trial claims, the United States Fifth Circuit Court of Appeals has explained:

> The right to a speedy trial is guaranteed by the Sixth Amendment and applies to state criminal proceedings through the Fourteenth Amendment. A violation of the speedy trial right, if found, requires dismissal of the indictment. In Barker [v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)], the Supreme Court prescribed several factors to be considered when evaluating a speedy trial claim: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant.

Goodrum v. Quarterman, 547 F.3d 249, 257 (5th Cir. 2008) (citations and footnotes omitted); accord Divers v. Cain, 698 F.3d 211, 215 (5th Cir. 2013). Regarding the balancing of those four factors, the United States Supreme Court explained:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

Barker, 407 U.S. at 533 (footnote omitted). Moreover, on federal habeas review, the state court's decision denying a petitioner's speedy-trial claim is entitled to an unusually high degree of deference:

> AEDPA imposes "a highly deferential standard for evaluating state-court rulings ...." Amos v. Thornton, 646 F.3d 199, 204 (5th Cir. 2011) (quotation marks and citation omitted). Even if the state court was apparently wrong, the decision must also be "objectively unreasonable, which is a substantially higher threshold." Id. (quotation marks and citation omitted).
>
> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, our "always-substantial deference is at an apex." Id. at 204-05.

Divers, 698 F.3d at 217. Balancing the four factors, and affording the deference required by the AEDPA, the undersigned finds that, for the following reasons, this Court should defer to the state court decision rejecting petitioner's federal speedy-trial claim.[27]

---

[27] Although the state court decision discussed petitioner's claim only in terms of state law, that does not mean that the court ignored the federal claim or that the decision is not entitled to deference. It is clear that the fact that a state court has not expressly addressed a claim in its written opinion does not lead to a presumption that the court failed to consider the claim on the merits; rather, there is a rebuttable presumption to the contrary. Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) ("[I]t is not the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference. On the contrary, there are several situations in which state courts frequently take a different course. ... When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."). Petitioner has made no attempt to rebut the presumption in this case.

Moreover, the United States Supreme Court has held that claims denied without explicit discussion are still subject to the AEDPA's deferential standards of review because they are presumed to have been denied on the merits:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§ 2254(d)(1) and (2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.
>
> ....
>
> There is no merit either in [petitioner's] argument that § 2254(d) is inapplicable because the [state court] did not say it was adjudicating his claim "on the merits." The state court did not say it was denying the claim for any other reason. When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Cf. Harris v. Reed, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).

Harrington v. Richter, 562 U.S. 86, 98-99 (2011) (citations omitted); accord Divers, 698 F.3d at 216.

Nevertheless, even if the state court decision were not entitled to deference and the claim were being considered *de novo*, the undersigned would reach the same conclusion for the reasons explained herein.

9

Regarding the first factor, the length of the delay, the United States Supreme Court has explained:

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

Doggett v. United States, 505 U.S. 647, 651-52 (1992) (citation omitted). The United States Fifth Circuit Court of Appeals has held: "As the Supreme Court has observed, courts generally view a delay of approximately one year as sufficient to require a full Barker analysis. This is the rule in the Fifth Circuit." Goodrum, 547 F.3d at 257 (footnote omitted).

In the instant case, petitioner was arrested and indicted in 1998, and his right to a speedy trial attached at that time. Because his trial did not commence until many years later in 2004, all four factors must be considered. In addition, because the delay at issue here was approximately five and one-half years, this first factor weighs in petitioner's favor. See, e.g., Amos v. Thompson, 646 F.3d 199, 206-07 (5th Cir. 2011) ("The bare minimum required to trigger a Barker analysis is one year. A delay must persist for at least eighteen months over and above that bare minimum for this factor to strongly favor the accused.").

Regarding the second factor, the reason for the delay, the United States Supreme Court explained:

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531 (footnote omitted). The Supreme Court has also held:

> [D]elay caused by the defense weighs against the defendant: If delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine. That rule accords with the reality that defendants may have incentives to employ delay as a "defense tactic": delay may work to the accused's advantage because witnesses may become unavailable or their memories may fade over time.
> Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant. The same principle applies whether counsel is privately retained or publicly assigned, for once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.

Vermont v. Brillon, 556 U.S. 81, 90-91 (2009) (footnote, citations, quotation marks, and brackets omitted). In summary, the Supreme Court explained: "Barker instructs that different weights should be assigned to different reasons, and in applying Barker, we have asked whether the government or the criminal defendant is more to blame for the delay." Id. at 90 (citations, quotation marks, and brackets omitted); accord United States v. Schreane, 331 F.3d 548, 554 (5th Cir. 2003).

In the instant case, it is obvious that the defense was far more to blame for the delays than the state. Specifically, the record reflects the following sequence of events:

Petitioner and co-defendant Erran Fleming were initially indicted on September 3, 1998.[28] On January 22, 1999, the petitioner's counsel filed a motion for a lunacy hearing.[29] A lunacy hearing was set for March 16, 1999;[30] however, at the defense's request, that hearing was

---

[28] State Rec., Vol. 1 of 8, Indictment.
[29] State Rec., Vol. 1 of 8, minute entry dated January 22, 1999.
[30] State Rec., Vol. 1 of 8, minute entry dated February 5, 1999.

11

continued until March 30, 1999.[31] At the defense's request, the hearing was then again continued to April 6, 1999.[32] At the April 6 hearing, petitioner was found to be competent.[33]

On June 30, 2000, petitioner then filed a motion to quash the indictment.[34] Over the next year, a number of pleadings were filed and proceedings were held in connection with that motion; however, the motion remained pending until the motion to quash was ultimately granted by the state district court on July 11, 2001.[35] At that point, both petitioner and the state appealed, and, on April 16, 2003, the Louisiana Fourth Circuit Court of Appeal reversed the trial court's judgment.[36] Petitioner then sought supervisory review by the Louisiana Supreme Court, and that court denied relief on November 26, 2003.[37]

At that point, proceedings then resumed in the state district court. However, rather that proceeding on the original indictment, the state instead promptly sought a new indictment, which was returned on January 15, 2004.[38] On April 7, 2004, the defendant filed another motion to quash.[39] That motion was denied the following day.[40] Petitioner then proceeded to trial on April 12-14, 2004, and he was convicted.[41]

In light of the foregoing, it is readily apparent that that the vast majority of the delays in petitioner's case resulted from the actions of the defense. Even disregarding the defense's other motions and actions, the defense motion for a lunacy hearing was pending for more than two

---

[31] State Rec., Vol. 1 of 8, minute entry dated March 16, 1999.
[32] State Rec., Vol. 1 of 8, minute entry dated March 30, 1999.
[33] State Rec., Vol. 1 of 8, minute entry dated April 6, 1999.
[34] State Rec., Vol. 1 of 8, minute entry dated June 30, 2000; see also Rec. Doc. 31, pp. 3-4.
[35] State Rec., Vol. 1 of 8, minute entry dated July 11, 2001.
[36] State v. Fleming, No. 2002-KA-1700 (La. App. 4th Cir. Apr. 16, 2003); State Rec., Vol. 2 of 8.
[37] State v. Fleming, 860 So.2d 1132 (La. 2003); State Rec., Vol. 2 of 8.
[38] State Rec., Vol. 5 of 8, Indictment.
[39] State Rec., Vol. 3 of 8, Motion and Order to Quash the Indictment.
[40] State Rec., Vol. 3 of 8, minute entry dated April 8, 2004.
[41] State Rec., Vol. 6 of 8, trial transcript, p. 213; State Rec., Vol. 3 of 8, minute entry dated April 14, 2004; State Rec., Vol. 5 of 8, jury verdict form.

months and the defense motion to quash the indictment was pending (including appellate review) for approximately forty-one months. Therefore, of the approximately sixty-seven months that elapsed between the institution of the proceedings and the beginning of trial, approximately forty-three months of the delay were directly attributable to the actions of the defense.[42] Even if the remaining twenty-four months are counted against the state, a delay of two years is not unduly egregious. Therefore, this second factor either weighs in favor of the state or, at worst, is neutral. See United States v. Andrews, 365 Fed. App'x 480, 485 (4th Cir. 2010) ("Because the bulk of the delays were caused by Andrews and thus weigh against him, and nothing in the record suggests an improper motive by the Government in requesting its continuances, the second Barker factor favors the Government." (citation omitted)); United States v. Schreane, 331 F.3d 548, 554 (5th Cir. 2003) (concluding that the second Barker factor favored "no one" when delay could be blamed on both parties).

Regarding the third factor, petitioner's assertion of his right to speedy trial, the United States Supreme Court explained:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*

Barker, 407 U.S. at 532-32 (emphasis added).

---

[42] The Court is aware that petitioner argues that the state should simply have sought a new indictment after the district court's adverse ruling rather than pursuing review in the Court of Appeal. Petitioner points to no authority which suggests that the state was constitutionally required to forgo appellate review of an adverse ruling on a defense motion, and this Court is not aware of any such authority. Moreover, petitioner conveniently ignores that he also sought review by the Court of Appeal and that he, *not the state*, pursued the matter to the Louisiana Supreme Court.

Here, petitioner does not allege in his petition when he asserted his right to a speedy trial. Moreover, the undersigned has reviewed the eight volumes of the state court record and has located no pleading in which the defense moved for a speedy trial. In the absence of any evidence that petitioner moved for a speedy trial in a timely manner, *if at all*, this third factor obviously weighs in favor of the state. Cf. Hakeem v. Beyer, 990 F.2d 750, 765 (3rd Cir. 1993) ("[W]e believe, if a defendant is to tip the Barker scales significantly in his favor on the factor of assertion of the right, that, at least in cases where the accused is represented by counsel, some formal motion should be made to the trial court or some notice given to the prosecution. A demand for trial so given does more than meet the exhaustion requirement of § 2254(b); it notifies the state forum that a violation of constitutional proportions may be ongoing, and it gives the state an opportunity to remedy the situation.").

Regarding the fourth factor, resulting prejudice, the United States Supreme Court explained:

> Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

Barker, 407 U.S. at 532 (footnote omitted).

With respect to this factor, an additional observation is necessary. As noted, a full Barker analysis was required in this case because the delay was considered presumptively prejudicial in that it exceeded one year. However, as the United States Supreme Court has explained: "[A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a

14

statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

It is nevertheless clear that, in some cases, a delay is so protracted and the reasons for the delay so egregious that a petitioner need not show actual prejudice at the fourth prong. In fact, that was the case in Doggett, in which the Supreme Court explained:

> [T]he Government claims Doggett has failed to make any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence. Though Doggett did indeed come up short in this respect, the Government's argument takes it only so far: consideration of prejudice is not limited to the specifically demonstrable, and, as it concedes, *affirmative proof of particularized prejudice is not essential to every speedy trial claim.* Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. *While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.*

Id. at 655-56 (citations and quotation marks omitted; emphasis added). The Supreme Court then discussed the role presumptive prejudice should play at the fourth prong of the Barker analysis by examining hypothetical situations. The United States Fifth Circuit Court of Appeals has concisely summarized that discussion as follows:

> The Court in Doggett provided three hypotheticals to illustrate the role of presumptive prejudice.
>     The Court described three situations in which a defendant would have to show varying degrees of prejudice. The defendant's degree of proof in each situation varies inversely with the government's degree of culpability for the delay. Thus, in the first case, where the government was reasonably diligent in its efforts to bring the defendant to trial, the defendant must show specific prejudice to his defense. This is so, according to the Court, no matter how great the delay. On the other hand, if the defendant can show that the government intentionally held back

15

its prosecution in order to gain an impermissible tactical advantage, then the
defendant would present an overwhelming case for dismissal.

"Official negligence" occupies the "middle ground," according to the Court.
When the government's conduct is neither diligent nor malicious but simply
negligent, the court must perform yet another balancing to determine the weight to
be accorded such negligence. This balancing requires the court to determine what
portion of the delay is attributable to the government's negligence and whether this
negligent delay is of such a duration that prejudice to the defendant should be
presumed. The weight given to the government's negligence varies directly with
its protractedness and its consequent threat to the fairness of the accused's trial.

Robinson v. Whitley, 2 F.3d 562, 570 (5th Cir. 1993) (citations and quotation marks omitted).

Ultimately, the Supreme Court found in Doggett that "the Government's egregious persistence in failing to prosecute Doggett" was sufficient to warrant relief without an affirmative showing of prejudice. The Court reasoned:

> The lag between Doggett's indictment and arrest was 8 ½ years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays extraordinary. *When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.*

Doggett, 505 U.S. at 657-58 (citations, footnotes, and quotation marks omitted; emphasis added).

Therefore, the clearly established federal law, i.e. Doggett, provides only that a petitioner is relieved of the affirmative obligation to make a particularized showing of actual prejudice if the delay attributable to the state is six years or longer. As the United States Tenth Circuit Court of Appeals explained in Jackson v. Ray, 390 F.3d 1254 (10th Cir. 2004):

> In cases of extreme delay, criminal defendants need not present specific evidence of prejudice. Instead, they may rely on the presumption of prejudice created by the delay. Doggett, 505 U.S. at 655, 112 S.Ct. 2686. Here, Mr. Jackson argues that the state's culpability for, and the length of, the four and one-third-year delay places this case within the ambit of the Doggett rule. We disagree.
> In Doggett, the Court held that a delay of eight and one-half years, of which the government was responsible for approximately six years, relieved the defendant

16

of the need to make a particularized showing of prejudice. Id. at 657, 112 S.Ct. 2686. The Court held that "[w]hen the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review [i.e., six years], and when the presumption of prejudice, albeit unspecified, is neither extenuated as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." Id. at 658, 112 S.Ct. 2686. Here, because the delay is less than six years, clearly established Supreme Court law does not require application of the Doggett rule.

Jackson, 390 F.3d at 1263-64.

In the instant case, the entire delay in the case (both that caused by the state and by petitioner) was less than six years. Therefore, prejudice is not presumed but instead must be proved by petitioner. He has not met his burden of proof.

For example, petitioner has made no showing whatsoever that his ability to present a defense was in any way impaired by the delay. He has not identified any witnesses who were unavailable (or whose memories were dimmed) as a result of the delay or any evidence that was rendered unavailable.

Although prejudice can also take other forms, such as oppressive pretrial incarceration or anxiety and concern on the part of the accused, petitioner has failed to establish those forms of prejudice as well. The United States Fifth Circuit Court of Appeals has noted that a particularized showing is required in support of a claim of oppressive pretrial detention. For example, in United States v. Frye, 489 F.3d 201 (5th Cir. 2007), the Fifth Circuit held:

> Frye's argument that he suffered oppressive pretrial incarceration is conclusory and not supported by evidence specifying harm. A lengthy pretrial incarceration does not inherently offend a defendant's liberty interests. See, e.g., Gray v. King, 724 F.2d 1199, 1204 (5th Cir. 1984) (finding no oppressive pretrial incarceration where defendant received credit for pretrial incarceration to be applied his sentence). Frye was ultimately sentenced to life in prison without the possibility of release. Therefore, Frye, like the defendant in Gray, did not suffer any increase in his total time spent in prison as the result of pretrial delays. Because Frye has not identified anything otherwise oppressive about the pretrial incarceration, Frye cannot establish that the pretrial incarceration created prejudice.

17

Frye, 489 F.3d at 213. The same is true of petitioner, who was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence. Further, he has presented no evidence of undue anxiety or concern, and it is clear that "generalized expressions of anxiety and concern amount to little more than a nominal showing of prejudice." Goodrum v. Quarterman, 547 F.3d 249, 263 (5th Cir. 2008); accord Leachman v. Stephens, 581 Fed. App'x 390, 405 (5th Cir. 2014) ("The trial court transcript reveals only Leachman's own assertions of stress and anxiety and no corroborating evidence of those assertions. This factor thus does not favor Leachman."), cert. denied, 135 S. Ct. 2315 (2015); United States v. Herman, 576 F.2d 1139, 1147 (5th Cir. 1978) ("Herman does allege, however, that he was anxious and that his pre-trial incarceration was oppressive. We agree with Herman that his pre-trial incarceration was unfortunate. No one factor, however, controls the balancing process that determines whether a trial has been speedy.").

For all of these reasons, the undersigned finds that petitioner failed to make the required particularized showing of prejudice and that the fourth Barker factor therefore favors the state.

In summary, only the first of the four Barker factors weighs in petitioner's favor. The second factor weighs in favor of the state or is, at worst, neutral. The third and fourth factors clearly weigh in the state's favor. Faced with such mixed results under a Barker analysis, the undersigned simply cannot say that the state court's "ultimate decision" rejecting petitioner's claim constituted an unreasonable application of clearly established federal law. See, e.g., Goodrum v. Quarterman, 547 F.3d 249 (5th Cir. 2008) (relief denied where the first and third factors weighed heavily in petitioner's favor, the second factor weighed slightly in his favor, and the fourth factor weighed in the state's favor); see also Amos v. Thornton, 646 F.3d 199 (5th Cir. 2011) (relief denied where the first and second factors weighed slightly in petitioner's favor, the third factor

18

weighed strongly in his favor, and the fourth factor weighed in the state's favor). Accordingly, under the AEDPA's deferential standard of review, petitioner's federal speedy-trial claim should be denied.[43]

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the amended petition for federal habeas corpus relief filed by Kevin Trainor be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of May, 2017.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] And, as already noted previously, the undersigned would reach the same conclusion even if conducting a *de novo* review of petitioner's claim.